IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAWZI KHALID ABDULLAH FAHAD AL ODAH, *et al.* <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> Respondents. | Civil Action No. 02-CV-0828 (CKK) |

**RESPONDENTS' MOTION TO QUASH
PETITIONERS' NOTICE OF DEPOSITION AND FED. R. CIV. P. 34 REQUEST**

Respondents hereby move to quash the Notice of Deposition and Fed. R. Civ. P. 34 Request served by petitioners on respondents on August 2, 2004 (copy attached as Exhibit A), on the grounds set forth in the Memorandum of Points and Authorities submitted herewith. Counsel for respondents has conferred with counsel for petitioners by telephone, and petitioners have indicated they oppose this motion.

Dated: August 6, 2004

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
Interim United States Attorney

THOMAS R. LEE
Deputy Assistant Attorney General

DAVID B. SALMONS
Assistant to the Solicitor General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

ROBERT D. OKUN
Chief, Special Proceedings Section

  /s/ Robert J. Katerberg
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
ALAN S. MODLINGER
ANDREW I. WARDEN
ROBERT J. KATERBERG
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Room 6112
Washington, DC  20530
Tel.:  (202) 616-8298
Fax:  (202) 616-8460

Attorneys for Respondents

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| FAWZI KHALID ABDULLAH FAHAD AL ODAH, *et al.* | ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 02-CV-0828 (CKK) |
| UNITED STATES OF AMERICA, *et al.*, | ) ) ) ) | |
| Respondents. | ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
RESPONDENTS' MOTION TO QUASH
<u>PETITIONERS' NOTICE OF DEPOSITION AND FED. R. CIV. P. 34 REQUEST</u>**

On July 23, 2004, the Court ordered expedited briefing of issues relating to proposed access-to-counsel procedures that the Government intends to apply to the Guantanamo detainees and to petitioners in this case. Petitioners have now attempted to co-opt that process and use it as a vehicle to engage in improper and premature discovery. On August 2, 2004, petitioners served a notice of deposition purporting to require the Deputy Commander of the Joint Task Force Guantanamo Bay, through whose declaration as Acting Commander respondents informed the Court about the access-to-counsel procedures to be applied at Guantanamo, to travel to Washington, D.C. for a deposition on Monday, August 9 – the same day briefing under the Court's July 23 Order closes. The notice also called for respondents to produce on the morning of August 9 eight categories of documents, many of which contain classified information and

implicate national security concerns, and only some of which have any connection to the issues on which the Court's July 23 Order calls for briefing.

The notice and document requests are wholly improper and should be quashed on the grounds set forth below.

## **PROCEDURAL HISTORY**

Shortly after this case was remanded by the Supreme Court, threshold issues arose about whether and how petitioners' counsel could be given some latitude to communicate with their clients in the course of this litigation without compromising the national security interests of the United States. On July 23, 2004, the Court held a teleconference on the record with the parties to discuss how the access-to-counsel issues should be handled in this litigation going forward. During the teleconference, even as the Court laid out a briefing schedule for expeditious resolution of this issue, petitioners' counsel never as much as suggested that he needed or planned to propound discovery as part of the process. After the teleconference, the Court entered its July 23, 2004, Order (dkt. no. 38) calling for briefing addressing specified topics relating to the access-to-counsel issues. The Court set an expedited schedule under which the Government's brief was due July 30, petitioners' by August 4, and the Government's reply by August 9, and a hearing was set for August 13 (since rescheduled to August 16). The Court added that "this timetable is firm. No extensions will be granted."

The Government filed its brief on Friday, July 30, and, pursuant to the Court's instructions, submitted with its brief Exhibit A, Procedures for Counsel Access to Detainees at the US Naval Base in Guantanamo Bay, Cuba (the "Procedures"), accompanied by a declaration by Brigadier General Martin J. Lucenti, Sr., Deputy Commander at Guantanamo Bay ("Lucenti

Decl."), authenticating and explaining the basis for the Procedures and their application to certain petitioner-detainees. (Dkt. no. 46) Petitioners saw this submission made in accordance with the Court's instructions as an invitation to unilaterally launch full-fledged exploratory discovery, and served a deposition notice for Gen. Lucenti and associated document requests the following Monday, August 2.

## ARGUMENT

**Assuming Discovery Will Ever Be Appropriate in this Habeas Corpus Case – a Matter of Considerable Doubt – It Certainly Is Improper at the Present Stage**

This is far from an ordinary civil case, where discovery is routinely available to litigants as a matter of course. To the contrary, both this Court and the Supreme Court have consistently treated it as a petition for a writ of habeas corpus, and petitioners recently confirmed that it is such. See Application for Writs of Habeas Corpus, dated July 27, 2004 (dkt. no. 44) ("clarifying the record" to reflect that petitioners apply for writs of habeas corpus). While "[i]t is, of course, true that habeas corpus proceedings are characterized as 'civil,' . . . . the label is gross and inexact. Essentially, the proceeding is unique." Harris v. Nelson, 394 U.S. 286, 293-94 (1969).

As such, it is highly doubtful that any discovery will ever be appropriate in this matter, particularly given the core separation of powers concerns implicated by such discovery. At a minimum, petitioners may not issue discovery as of right under the Federal Rules of Civil Procedure. In Harris v. Nelson, the Supreme Court held that the provisions of the Federal Rules granting liberal discovery do not apply to habeas corpus proceedings. 394 U.S. at 295-96. The Court remarked that those "provisions are ill-suited to the special problems and character of such [habeas] proceedings," id. at 296, that the "broad-ranging preliminary inquiry" of the Federal

Rules "is neither necessary nor appropriate in the context of a habeas corpus proceeding," id. at 297, and that applying the Federal Rules "would do violence to the efficient and effective administration of the Great Writ," id. Although the Court went on to hold that the district court in its discretion under the All Writs Act could grant leave to engage in some limited discovery in an appropriate case where there was reason to believe the petitioner was entitled to relief, id. at 298-300, it stressed that any such discovery was not automatic and could not be "activated on [the petitioner's] own initiative," id. at 297. The Court recently reaffirmed the teaching of Harris v. Nelson. See Bracy v. Gramley, 520 U.S. 899, 904 (1997) ("A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course.").[1]

This strong presumption against discovery, originating in the context of a run-of-the mill habeas case involving a state prisoner, takes on a whole new dimension in cases like this one involving the military's detention of enemy combatants during active hostilities. What petitioners seek is truly unprecedented: for an affiliate of al Qaeda (Lucenti Decl. ¶ 19), an organization whose avowed and demonstrated goal is to murder American civilians, to cross-examine and seek to impeach (through his counsel) a United States military commander about the circumstances of his capture, detention, and interrogation and to gain access to the United States' classified information about him. "It would be difficult to devise more effective fettering of a field commander than to allow the very enemies he is ordered to reduce to submission to call him to account in his own civil courts and divert his efforts and attention from the military offensive

---

[1] Cf. Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts (codifying Harris v. Nelson by allowing discovery only "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise" and requiring submission of the proposed discovery to the court for approval); see also id. Rule 1(b) (application of § 2254 Rules in non-§ 2254 cases is within court's discretion).

abroad to the legal defensive at home." Johnson v. Eisentrager, 339 U.S. 763, 779 (1950). If discovery is disfavored even in garden variety habeas cases, surely this is not likely to be the rare case where the presumption is overcome.

But it is not necessary today for the Court to decide the hypothetical question whether some circumstance later in this proceeding may establish good cause for some limited discovery. What is overwhelmingly clear is that discovery is not appropriate at the present stage. The discovery requests were spawned by briefing that, in turn, was the product of the Court's July 23, 2004, Order. That Order neither contemplates nor permits the taking of discovery as part of the adjudication of the threshold issues concerning access to counsel. Indeed, the accelerated timetable ordered by the Court forecloses discovery as a practical matter. The return date on petitioners' notice (Ex. A) itself shows that the timing does not compute: the deposition is set for August 9, the same day briefing closes, and after petitioners' sole brief was already due on August 4. Hence, it will already be too late for petitioners to make use of whatever information they hope to elicit from the deposition or document production in their submission pursuant to the Court's July 23, 2004, Order. Moreover, the discovery that petitioners seek would apparently be a one-way street, because there obviously is not sufficient time for respondents to conduct any discovery of their own between the August 4 filing of petitioners' brief and the August 9 due date of respondents' reply brief.[2]

---

[2] If petitioners try to evade the holding of Harris v. Nelson that discovery is not available as of right in habeas cases, and avail themselves of the more liberal discovery provisions of the Federal Rules by disavowing their recent filing (dkt. no. 44) and recasting their action as something other than a petition for a writ of habeas corpus, their discovery requests are ill-timed for an additional reason: No Rule 26(f) meeting has occurred in this case. If this is not a habeas case, then Rule 30 (regarding depositions) and Rule 34 (regarding document requests) alike forbid discovery before the parties' initial Rule 26(f) meeting except with leave of court, which

Nor would the discovery sought by petitioners aid in elucidating the issues addressed in the parties' briefs under the Court's July 23, 2004, Order.  As set forth in respondents' July 30 brief, the initial issue is whether petitioners, who indisputably are non-resident aliens detained by the military outside the sovereign territory of the United States and in a non-criminal capacity, have a right to counsel under the Constitution or treaties of the United States.  That is a pure issue of law governed by the terms of the Constitution and treaties and by case precedents, on which neither Gen. Lucenti's testimony nor the types of documents sought by petitioners' Rule 34 requests[3] has any bearing.  Put simply, petitioners' claim of a right to counsel will rise or fall independently of anything Gen. Lucenti has to say on the subject.  The only conceivable relevance Gen. Lucenti's testimony and some of the requested documents could have to the access-to-counsel issue would be in establishing the reasonableness of the Government's adopted procedures for counsel access – an inquiry that would take place <u>only if</u> and <u>after</u> the Court makes the crucial antecedent determination that petitioners possess a right to counsel.[4]  Even then, the discovery petitioners seek would be improper.  Whatever attenuated, contingent evidentiary value it might have would not justify the extraordinary step of separating a high-level

---

has not been granted here.  <u>See</u> Fed. R. Civ. P. 30(a)(2)(C); Fed. R. Civ. P. 34(b); <u>see also</u> Fed. R. Civ. P. 26(d).

[3] <u>E.g.</u>, "[a]ll intelligence files compiled on the plaintiff-detainees in this action . . . ."  Ex. A, at ¶ 5.  It is likewise unclear what relevance "[a] list of the names of all plaintiffs in this action who are detained at Guantanamo Bay Naval Base," <u>id.</u> ¶ 1, could possibly have to the legal issue of entitlement to counsel.

[4] As set forth in our July 30 submission (dkt. no. 46), respondents emphatically disagree that petitioners are entitled to counsel in the first place.  Given that no underlying right to counsel exists, limitations on counsel access voluntarily accorded by the Government are reasonable <u>per se</u>.

Government official from his ongoing duties and forcing him to submit to a deposition in a civil case.  See, e.g., Simplex Time Recorder Co. v. Secretary of Labor, 766 F.2d 575, 586 (D.C. Cir. 1985); Community Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd., 96 F.R.D. 619, 621 (D.D.C. 1983).  That proposition rings truer than ever where, as here, the deposition is of a military commander during wartime and is sought by enemies of the United States.  Cf. Hamdi v. Rumsfeld, 124 S. Ct. 2633, 2649 (2004) (stressing the need to tailor litigation procedures "to alleviate their uncommon potential to burden the Executive at a time of ongoing military conflict").

Even if it finds that an underlying right to counsel does exist, the Court is well-equipped to rule on the validity and adequacy of the Procedures as a preliminary matter in this litigation without the need for discovery.  At least since United States v. Morgan, 313 U.S. 409 (1941), it has been clear even in the civilian context – and, again, doubly so as applied to military commanders during wartime – that it is not the function of courts to "probe the mental processes" of Government officials.  Id. at 422.  Indeed, courts routinely pass on the constitutionality of agency rules and actions without discovery, because those issues – like this one – are typically issues of law.  For example, in United States v. El-Hage, 213 F.3d 74 (2d Cir.), cert. denied, 531 U.S. 881 (2000), when the appellate court concluded that the due process rights of a U.S. citizen criminal defendant accused of terrorism-related crimes were not violated by reasonable restrictions on his communications while in custody, it did so through a legal balancing test that it performed in the first instance (the district court having addressed the issue only summarily), without needing to resort to the unusual step of taking deposition testimony from the warden.  Id. at 78, 81-82.  And, in Padilla ex rel. Newman v. Bush, 233 F. Supp. 2d 564 (S.D.N.Y. 2002),

aff'd in part, rev'd in part on other grounds, 352 F.3d 695 (2d Cir. 2003), rev'd, 124 S. Ct. 2711 (2004), also involving a U.S. citizen, the court itself proposed monitoring (as a less restrictive alternative to prohibiting communications with counsel altogether), again without suggesting a need for discovery or fact development. Id. at 604. The Court is able to rule on the matters that the parties have briefed according to its July 23, 2004, Order, without getting the case bogged down in civil pretrial discovery singularly ill-suited for this very unique type of case.[5]

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court quash the Notice of Deposition and Fed. R. Civ. P. 34 Request served by petitioners on respondents on August 2, 2004.[6]

---

[5] Discovery is particularly unsuited for this case given that the matters discussed in Gen. Lucenti's Declaration are extremely sensitive and implicate national security concerns. See Lucenti Decl. ¶ 15 ("A description of specific details regarding the risk posed by these individual detainees and the intelligence in their possession would require presentation in a classified format.").

[6] In addition to the grounds set forth above, petitioners' discovery requests suffer from other flaws as well. The notice of deposition is invalid because it seeks to require a senior military officer to leave his duty station in Guantanamo Bay, Cuba, to travel to Washington, D.C. for a deposition. See, e.g., Philadelphia Indem. Ins. Co. v. Fed. Ins. Co., 215 F.R.D. 492, 495 (E.D. Pa. 2003) (following general rule that proper venue for deposition of defendant's employee is location of employment); Metrex Research Corp. v. United States, 151 F.R.D. 122, 125 (D. Colo. 1993) ("the deposing party should be required to take the deposition at a location in the vicinity in which the deposing party resides, even if the deponent is a party"); Farquhar v. Shelden, 116 F.R.D. 70, 72 (E.D. Mich. 1987) ("[P]laintiffs normally cannot complain if they are required to take discovery at great distances from the forum."); Work v. Bier, 107 F.R.D. 789, 793 n.4 (D.D.C. 1985) ("[T]he universally accepted rule in federal litigation is that, in the absence of special circumstances . . . . a party seeking discovery must go where the desired witnesses are normally located."). Likewise, the document requests are defective because they purport to require production of documents only seven days from the date of the request, an unreasonably short period of time. Cf. Fed. R. Civ. P. 34(b) ("The party upon whom the request is served shall serve a written response within 30 days after the service of the request.").

Dated:  August 6, 2004

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
Interim United States Attorney

THOMAS R. LEE
Deputy Assistant Attorney General

DAVID B. SALMONS
Assistant to the Solicitor General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

ROBERT D. OKUN
Chief, Special Proceedings Section


  /s/ Robert J. Katerberg
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
ALAN S. MODLINGER
ANDREW I. WARDEN
ROBERT J. KATERBERG
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Room 6112
Washington, DC  20530
Tel.:  (202) 616-8298
Fax:  (202) 616-8460