THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FAWZI KHALID ABDULLAH FAHAD AL ODAH, )
   *et al.*, )
                 **Plaintiffs**, )
                                  )
                v.                            )   No. CV 02-0828 (CKK)
                                  )
UNITED STATES OF AMERICA, *et al.*, )   ORAL HEARING
                                  )   REQUESTED
               **Defendants**. )
                                  )

## OPPOSITION TO RESPONDENTS'[1] MOTION TO QUASH

The government's relentless assault upon the judicial process continues. Having voluntarily filed the Declaration of Martin J. Lucenti Sr. ("Lucenti Dec.") to support its plan for "classification" review and "real time" monitoring of counsel communications with the Kuwaiti Detainees, the government now argues that plaintiffs have no right to depose Brigadier General Lucenti and that his declaration must be accepted untested by cross-examination. Indeed, relying on *Harris v. Nelson*, 394 U.S. 286 (1969), the government not only seeks to "quash" plaintiffs' deposition but also claims "it is highly doubtful that any discovery will ever be appropriate in this matter." Memorandum of Points and Authorities in Support of Respondents' Motion to Quash Petitioners' Notice of Deposition and Fed. R. Civ. P. 34 Request ('Gov't Motion"), p. 3. Alternatively, the government says the deposition and related document request are premature and unnecessary to a resolution of the pending access- to-counsel issue. *Id.*, pp. 5-8.

However, the government's arguments, which are of a piece with the government's overarching and discredited contention that the plaintiff-detainees have no rights at all that can

---

[1]     In their motion to quash defendants refer to themselves as "respondents" and to plaintiffs as "petitioners." To the extent this is an effort by defendants to limit this civil action to a habeas corpus proceeding, it must fail in light of the Supreme Court's decision explicitly sustaining the Court's jurisdiction to entertain plaintiffs' non-habeas claims. *Rasul v. Bush*, 124 S. Ct. 2686, 2698-2699 (2004).

be vindicated in this civil action,[2] have no merit. In *Harris v. Nelson* the Supreme Court actually *upheld* the power of the federal courts, under the All Writs Act, 28 U.S.C. § 1651, to allow discovery by habeas petitioners and declared it to be "the inescapable obligation of the courts" to do so in appropriate circumstances. 394 U.S. at 299. Moreover, where, as here, an affidavit is admitted in a habeas proceeding, 28 U.S.C. § 2246 confers an absolute right upon the opposing party to engage in discovery from the affiant. Plaintiffs need to depose Brigadier General Lucenti before the Court hears and resolves the issue of whether the Kuwaiti Detainees are entitled to unmonitored access to counsel because the government's position rests largely on questionable factual allegations in his declaration, especially the allegation that there are no alternatives to monitoring. It appears Brigadier General Lucenti did not consider plaintiffs' offer of three weeks ago not to disclose *any* information their may counsel obtain from the Kuwaiti Detainees except to the Court or under a procedure that would allow the government an opportunity to prevent disclosure. Therefore, the Court should deny the government's motion.

## ARGUMENT

### A. Plaintiffs' Deposition and Related Document Request are Authorized Under the All Writs Act and 28 U.S.C. § 2246

1. It is ironic that the government relies upon *Harris v. Nelson* to deny plaintiffs the opportunity to depose Brigadier General Lucenti and to obtain documents to which he refers in his declaration. The issue in *Harris v. Nelson* was whether a state prisoner who had been granted

---

[2] According to the government, "[p]etitioners have no right to relief, including the right of access to counsel," under the Constitution or treaties of the United States. Response to Complaint in Accordance with Court's Order of July 25, 2004 ("Gov't Response"), p. 2. This argument was considered and rejected by the Supreme Court in *Rasul*: "Petitioners' allegations – that, although they have engaged in neither combat nor in acts of terrorism against the United States, they have been held in Executive detention for more than two years in territory subject to the long-term, exclusive jurisdiction and control of the United States, without access to counsel and without being charged with any wrongdoing – *unquestionably* describe 'custody in violation of the Constitution or laws or treaties of the United States'" (emphasis added). 124 S. Ct. at 2698 n. 15.

an evidentiary hearing on his application for a writ of habeas corpus was authorized by Fed. R. Civ. P. 33 to serve written interrogatories upon the warden of his prison. The district court ordered the warden to respond to the interrogatories, but the Ninth Circuit vacated that order, ruling that the discovery provisions of the Federal Rules of Civil Procedure were not applicable to habeas corpus proceedings. The Supreme Court *reversed* the Ninth Circuit's decision. Although it agreed with the Ninth Circuit that the petitioner was not entitled to the full panoply of discovery tools available under the Federal Rules of Civil Procedure, it held that the district court was empowered by the All Writs Act, 28 U.S.C. § 1651, to authorize the discovery the state prisoner had sought.

The Supreme Court's reasoning in *Harris v. Nelson* is instructive. The Supreme Court began by observing that "[t]he writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action," and the "[t]he scope and flexibility of the writ – its capacity to reach all manner of illegal detention – its ability to cut through barriers of form and procedural mazes – have always been emphasized and jealously guarded by courts and lawmakers." 394 U.S. at 290-291. The Supreme Court stressed that "[t]he very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." *Id.* at 291. It admonished that, "taking into account the office of the writ and the fact that the petitioner, being in custody, is usually handicapped in developing the evidence needed to support in necessary detail the facts alleged in his petition, [a] habeas corpus proceeding must not be allowed to founder in a 'procedural morass.'" *Id.* at 291-292. In sweeping terms the Supreme Court proclaimed that "[t]here is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such

proceedings that a person in custody charged that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law." *Id.* at 292.

Turning to the question before it, the Supreme Court concluded that neither the language nor the legislative history of the Federal Rules of Civil Procedure showed that the discovery provisions in those rules should apply to habeas proceedings. 394 U.S. at 292-298. But despite its conclusion that the Rules' discovery provisions do not apply "completely and automatically" to habeas proceedings, the Supreme Court explained that this "is not to say that there is no way in which a district court may, in an appropriate case, arrange for procedures which will allow development, for purposes of the hearing, of the facts relevant to disposition of a habeas corpus petition. *Id.* at 298. Relying upon the All Writs Act, 28 U.S.C. § 1651, that "has served since its inclusion, in substance, in the original Judiciary Act as a 'legislatively approved source of procedural instruments designed to achieve 'the rational ends of law,'" the Supreme Court held "the courts may fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage," to allow a habeas petitioner to "secur[e] facts where necessary to accomplish the objective of the proceedings * * * ." *Id.* at 299. According to the Supreme Court, "this is the inescapable obligation of the courts." *Id.*. To summarize, "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Id.* at 300.

In the present case there is good reason to believe that plaintiffs' deposition of Brigadier General Lucenti and their related document request are necessary and appropriate for the adequate development of their habeas and non-habeas claims. The government relies on the

4

factual allegations in the Lucenti Declaration to justify the *post hoc* "classsification" review (which includes reading all of counsel's interview notes and de-briefing them on all oral communications from the detainees)[3] and "real time" monitoring of communications between the Kuwaiti Detainees and their counsel. See Response to Complaint in Accordance with Court's Order of July 25, 2004, pp. 2, 7-8, 27-29 ("Gov't Response"); Lucenti Dec., ¶¶ 8-20. In particular, the government relies on Brigadier General Lucenti's factual allegations to support its contention that (i) there are no reasonable alternatives to the government's "classification" review and "real time" monitoring, (ii) "real time" monitoring of three of the Kuwait Detainees is required because they are very dangerous, and (iii) "classification" review of all the Kuwaiti Detainees is required because they possess "highly classified" information. See Gov't Response, pp. 7-8, 27-29; Lucenti Dec., ¶¶ 8-12, 14, 16-20.

But first, although Brigadier General Lucenti avers that he considered "the various options" open to the government (Lucenti Dec., ¶ 8), he makes no mention in his declaration of the alternative to "classification" review and "real time" monitoring proposed three weeks ago by plaintiffs' counsel to the government, namely, that plaintiffs' counsel will not disclose *any* information they obtain from the detainees except to the Court or under a procedure that allows the government a prior opportunity to object to the disclosure and, in cases of dispute, to present the dispute to the Court for decision. See Memorandum of Points and Authorities in Opposition to Defendants' "Response to Complaint" (Pl. Opp.)," pp. 3-4; 19-20; *cf.* Transcript of

---

[3]  Under section VII.A of the government's proposed "Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba" (Exhibit A to Gov't Response), a "privilege team" will review "all written materials brought into or out of the meetings by counsel or counsel's staff, including notes, drawings or other writings created by counsel and/or the detainee during or prior to meetings to determine their appropriate security classification." Under section XI.b, "[a]ny information not subject to classification review by the privilege team, including oral communications with the detainee, must be treated as classified information unless otherwise determined by the privilege team," and the "privilege team" will advise counsel of that determination only after reviewing the communications.

5

Proceedings, July 23, 2004, pp. 13-15, 23, 31-33. Although it may be expected that, at the upcoming hearing on August 16, 2004, government counsel will address this alternative, the Court is entitled to hear testimony directly from the government's designated security expert about plaintiff's alternative to assess it properly.

Second, although Brigadier General Lucenti avers that counsel communications with three of the Kuwaiti Detainees must be subject to "real time " monitoring because they are very dangerous (Lucenti Dec., ¶¶ 17-20), he does not reconcile this allegation with the fact that other detainees at Guantanamo Bay who face proceedings before military commissions on charges of committing heinous terrorist crimes or who have been designated for such proceedings are being granted unmonitored access to their counsel. Brigadier General Lucenti also does not reconcile this allegation with the fact that *none* of the Kuwaiti Detainees has been determined by the President to be subject to the Military Order of November 13, 2001, "Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism," 66 Fed. Reg. 57,833 (Nov. 16, 2001). Under section 2(a) of the President's Military Order a non-citizen is subject to detention and trial by military commission if the President determines "there is reason to believe" that individual "is or was a member of the organization known as al Qaida," or "has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy," or has "knowingly harbored one or more individuals" described above. The Court is entitled to hear testimony directly from Brigadier General Lucenti about the discrepancy between the non-monitoring of counsel communications with detainees charged with terrorist crimes and the proposed monitoring of three Kuwaiti Detainees who have not been charged with any wrongdoing, as well

6

as about the fact that the Commander-in-Chief has not made the adverse determinations about the three Kuwaiti Detainees that Brigadier General Lucenti has made.

Third, although Brigadier General Lucenti avers that "classification" review and "real time" monitoring of the Kuwaiti Detainees is justified because all of those Detainees possess "highly classified" information (Lucenti Dec., ¶ 16), Defense Department counsel specifically advised plaintiffs' counsel several weeks ago that, to date, *none* of the Kuwaiti Detainees had been designated as being in possession of classified information. *See* Transcript of Proceedings, July 23, 2004, pp. 13-15. The Court is entitled to hear directly from Brigadier General Lucenti about this discrepancy as well.

Under these circumstances it is both appropriate and necessary that plaintiffs be permitted to take the deposition of Brigadier General Lucenti. In other civil proceedings it is commonplace for a party against whom an affidavit has been submitted to the court to depose the affiant prior to the court's consideration of the affidavit. . For example, when a movant for summary judgment supports its motion with an affidavit, courts routinely grant a continuance to the opposing party under Fed. R. Civ. P. 56(f) to allow for a deposition of the affiant prior to considering the affidavit. *See, e.g., Johnson v. Ohio Dep't of Youth Services*, 231 F.Supp.2d 690, 693 (N.D. Ohio 2002); *Messina v. Mazzeo*, 854 F. Supp. 116, 141-142 (E.D.N.Y. 1994). Even in preliminary injunction proceedings, where more liberal use of affidavits is allowed, courts have exercised their discretion to disregard the affidavits if the affiant has not been subject to cross-examination. *See, e.g., Two Wheel Corp. v. American Honda Corp.*, 506 F. Supp. 806, 816 n.11) (E.D.N.Y.), *aff'd*, 633 F.2d 206 (2d Cir. 1980). Accordingly, as the Supreme Court held in *Harris v. Nelson,* 394 U.S. at 299, it is "the inescapable obligation" of the Court to authorize

plaintiffs' deposition of Brigadier General Lucenti under the All Writs Act. *Accord, Cherrix v. True*, 177 F.Supp.2d 485, 495-496 (E.D. Va. 2001). under the All Writs Act.

2. Plaintiffs also have an absolute right under 28 U.S.C. § 2246 to take the deposition of Brigadier General Lucenti and obtain related documents from the government. That statute provides that, on an application for a writ of habeas corpus, "evidence may be taken orally or by deposition," and "[i]f affidavits are admitted any party shall have the right to propound written interrogatories to the affiants, or to file answering affidavits." It appears that the petitioner in *Harris v. Nelson* could not rely upon 28 U.S.C. § 2246 because no affidavits had been admitted by respondent in that case. *See Wilson v. Harris*, 378 F.2d 141, 144 (9th Cir. 1967). Here, in contrast, the government voluntarily filed Brigadier General Lucenti's declaration to be used against plaintiffs. By doing so it has opened the door to plaintiffs to exercise their right to obtain discovery from the affiant. *See Wilson v Weigel*, 387 F.2d 632, 634 & n. 3 (9th Cir. 1967); *Thompson v. Crawford*, 656 F. Supp. 1183, 1184 (S.D. Fla. 1987).

### B. Plaintiffs' Deposition of Brigadier General Lucenti and its Related Document Request are Limited and Not Intrusive

Contrary to the government's claim (Gov't Motion, p. 4), plaintiffs are not seeking by the noticed deposition to cross-examine or impeach Brigadier General Lucenti "about the circumstances of [a detainee's] capture, detention, and interrogation * * * ."[4] Plaintiffs seek only to depose Brigadier General Lucenti about the allegations in his declaration that the government voluntarily submitted to support its proposals for *post hoc* "classification" review and "real time" monitoring of counsel communications with the Kuwaiti Detainees. Of the eight categories of

---

[4] The government gratuitously refers to the Kuwaiti Detainees as "affiliate[s] of al Qaeda * * *, an organization whose avowed and demonstrated goal is to murder American civilians," and as "enemies of the United States." Gov't Motion, pp. 4, 7. However, the government still has not filed an answer to the amended complaint. Thus, plaintiffs' allegations denying any affiliation with al Qaeda and denying the commission of any acts of wrongdoing against the United States stand unrefuted on the pleadings.

documents plaintiffs have requested to be produced at the deposition, four are categories of documents to which Brigadier General Lucenti expressly refers in his declaration and one is his *curriculum vitae*. Notice of Deposition and Fed. R. Civ. P. 34 Request, ¶¶ 4-8. The remaining three categories are (i) the names of the Kuwaiti Detainees confined at Guantanamo Bay, whose counsel communications would be subject to "classification" review and "real time monitoring, (ii) the names of any of the Kuwaiti Detainees subject to the President's Military Order (plaintiffs believe there are none), and (iii) the names of any of the Kuwaiti Detainees charged with wrongdoing (again plaintiffs believe there are none). Thus, the deposition and documents plaintiffs seek are targeted and non-intrusive.[5]

The government disingenuously claims that plaintiffs propose "the extraordinary step of separating a high-level Government official from his ongoing duties and forcing him to submit to a deposition in a civil case." Gov't Motion, pp. 6-7; *id.*, p. 8 n. 6. But as government counsel knows, plaintiffs' counsel expressly advised government counsel last week that he was perfectly willing to discuss "time, place, and manner" issues regarding Brigadier General's deposition, including holding the deposition at Guantanamo Bay Naval Base, limiting the amount of time for the deposition, and limiting its scope. *See* Attachment A, e-mail exchanges of Terry Henry and Neil H. Koslowe, August 5-6, 2004. Government counsel declined to discuss these issues, taking the position that the deposition was improper *in toto*. *Id.* Moreover, the government should not be heard to complain that the deposition of Brigadier General Lucenti would

---

[5] Plaintiffs' counsel already has the highest security clearance the government says is necessary to view whatever classified documents it has regarding the Kuwaiti Detainees. Therefore, there is no basis for the government's concern (Gov't Motion, p. 8 n. 5) that complying with plaintiffs' document request raises national security concerns. And to the extent the government fears plaintiffs will attempt to the deposition of Brigadier General Lucenti will allow plaintiffs to "'probe the mental processes' of Government officials'" (Gov't Motion, p. 7) at Brigadier General Lucenti's deposition, its counsel may instruct the Brigadier General not to answer any questions calling for privileged information.

constitute an unjustifiable intrusion on his military duties, in light of the time Brigadier General Lucenti apparently spent reviewing many documents and drafting his declaration.

In short, the government cannot have it both ways. It cannot use the declaration of Brigadier General Lucenti as a sword against plaintiffs to provide factual support for its proposal to subject counsel communications with the Kuwaiti Detainees to *post hoc* "classification" review and "real time" monitoring, but then argue that the declaration must be shielded from examination by plaintiffs.

## CONCLUSION

For the foregoing reasons, the Court should deny the government's motion to quash.[6]

Respectfully submitted,

*/s/ Neil H. Koslowe*

Thomas B. Wilner (D.C. Bar #173807)
Neil H. Koslowe (D.C. Bar #361792)
Kristine A. Huskey (D.C. Bar #462979)
Jared A. Goldstein (D.C. Bar #478572

SHEARMAN & STERLING LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 508-8000
Facsimile: (202) 508-8100
Attorneys for Plaintiffs

Dated: August 10, 2004

---

[6] Plaintiffs have requested an oral hearing on their opposition to the government's motion. Although plaintiffs gave the government seven days' notice of the deposition, which more than satisfies LCvR 30.1, the government waited until the last business day before the deposition, August 6, to file its motion to quash. To enable plaintiffs to conduct the deposition in time to use it at the hearing on August 16 on the access to counsel issue, plaintiffs urge the Court to schedule the hearing and rule on the motion as expeditiously as possible.