UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| *In re* **Guantanamo Detainee Cases** | Civil Action Nos.<br>02-CV-0299 (CKK),  02-CV-0828 (CKK),<br>02-CV-1130 (CKK),  04-CV-1135 (ESH),<br>04-CV-1136 (JDB),   04-CV-1137 (RMC),<br>04-CV-1144 (RWR), 04-CV-1164 (RBW),<br>04-CV-1194 (HHK),  04-CV-1227 (RBW),<br>04-CV-1254 (HHK)<br><br>**JOYCE HENS GREEN**<br>United States District Judge<br>*Managing Judge* |

**REPLY TO RESPONDENTS' OPPOSITION TO
CROSS-MOTION FOR SUMMARY JUDGMENT
BY AMICUS CHARLES GITTINGS IN SUPPORT OF PETITIONERS**

**SUMMARY**

Amicus Curiae Charles B. Gittings Jr. respectfully submits this pleading in reply to *Respondents' Opposition to Brief of Amicus Curiae Charles B. Gittings, Jr. and <u>Cross Motion for Summary Judgment in Support of Petitioners</u>*, CA 02-CV-299 (CKK) dkt. no. 144 (hereinafter "*Resp. Opp.*").

On 10/12/2004 Amicus filed (by certified US post return receipt) a *Motion for CM/ECF Password* and *Motion for Leave to File as Amicus*, CA 02-CV-299 (CKK) dkt. no. 95, with an attached *Brief of Amicus Curiae Charles B. Gittings, Jr. and Cross Motion for Summary Judgment in Support of Petitioners* (hereinafter "*Cross-Motion*"). At the time, Amicus believed 10/12 was the due date for Petitioners' responses to the *Motions to*

*Dismiss,* but in the event, time was enlarged by order of the Court (10/12/2004), and Amicus' motions were docketed with the date of 10/14/2004, Amicus raising no objection.

The *Cross-Motion* included thirteen cases (including two now pending before Judge Leon), and the Clerk's Office began serving Amicus with the filings and orders in all thirteen by U.S mail, which added up to a fairly large stack over nearly two months. In November, Judge Robertson issued an opinion in *Hamdan* that reached conclusions which directly support the *Cross-Motion*. This Court heard arguments on the *Motions to Dismiss* in eleven of the cases on 12/1/2004, and Judge Leon heard arguments in the other two cases the following day.

On 12/8/2004 the Court issued an order granting Amicus leave to appear and ECF privileges, and the present *Cross-Motion* was docketed as such. Amicus then completed ECF training, Respondents filed *Resp. Opp.* on 12/16/2004, and the following day Judge **CITE** issued an opinion in *Abu Ali* which also touches here. There have also been some significant news reports over the last two months with a direct bearing on this matter.

Amicus here contends:

- That *Resp. Opp.* is untimely, frivolous, and false.

- That the material allegations of the *Cross-Motion* are undisputed on the record, conclusively supported by the decisions in *Hamdan* and *Abu Ali*, and conceded by Respondents in full.

- That *Resp. Opp.* is on its face a further offense in aid of their criminal conspiracy to commit war crimes pursuant to 18 USC § 2441(c)(2).

Amicus concludes that the Court should grant the *Cross-Motion* in full and closes with some recommendations for a preliminary order.

**ARGUMENT**

1.   **Respondents' Opposition**

In three scant pages, Respondents. recapitulate the *Cross-Motion's Conclusion* (section 4), *Resp. Opp.* at 1, a-d, *Cross-Motion* at 10, (a)-(d) (hereinafter "*CM4(a)-(d)*"); ignore the *Cross-Motion's* statement of facts entirely; run through a short list of opposing claims based on various precedents touching on the role of an amicus curiae in civil proceedings and a gratuitous reading of FRCP Rule 56; and conclude by blandly reasserting all their previous arguments in support of the *Motions to Dismiss*, including the fraudulent claims refuted by the first two sections of the *Cross-Motion* at 2-7.

2.   **Respondents' Opposition is Untimely and Stale**

Amicus' motions for leave were docketed as of 10/14/2004. All of the points raised by the *Resp. Opp.* are concerned with the proper role of amici. By the rules of this court, the points they raise in opposition here could and should have been made on those initial motions within eleven days, but instead they said nothing. In the interval, the Court, the Clerks, and Amicus all expended time, energy, and resources on the *present Cross-Motion* which Respondents now pretend is, in essence, frivolous on the basis of issues they should have raised at the outset.

But it is the *Resp. Opp.* that is frivolous, not the *Cross-Motion*.

3.   **Respondents' Opposition is Unresponsive and Concedes the Facts**

LCvR 7(h) states: "In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Respondents have made no effort at all to respond to the material allegations asserted by the *Cross-Motion* at 9(a)-(e), and those allegations are supported by the undisputed facts on the record. The court should accordingly find that the allegations are conceded by respondents.

**4.    The Role of Amicus**

Respondents state: "Mr. Gittings motion should be denied to the extent he seeks relief in his own right or other than that sought by Petitioners." In fact, Amicus has done doing no such thing: the stated purpose of Amicus herein is to "uphold the laws of the United States in the public interest," *Cross-Motion* at 1.

Respondents continue: "It is well settled that an amicus curia is not a party to litigation. * * * As such, an amicus may only support relief that is claimed by a party to the proceeding. * * * "Lack of standing to seek relief or raise arguments not presented by the parties is another consequence of not being a party to the litigation. * * * Finally, Federal Rule of Civil Procedure 56 only permits a "party" (which, as discussed above, amicus is not) to file for summary judgment."

In regard to FRCP Rule 56, it should be noted that there is not a single occurrence of the word "amicus" in either the FRCP or LCvR, but there is, however, specific reference to "parties of real interest," and FRCP Section IV, "Parties," includes Rules 17-25. If the Respondents' gratuitous narrow reading of the word "party" were correct, that reading would surely apply as well to the motions for leave and for ECF password (see e.g. LCvR 5.4(b)(2) etc.) that Amicus filed in the first place, and it would then be impossible for any amicus appear at all. Note also that the FRAP has many procedural references which include the language "parties or amici," and that those rules also allow the Circuit courts to invite an amicus or lower court judge to file a brief.

Amicus believes the word "party" generally means anyone actively or prospectively involved in a case except where it explicitly or impliedly refers to a *party of real interest*; and further, that amici *are* parties to the litigation within the narrow limits of the amicus role, and may file such motions as comport with that role. The role of amici is stated very plainly by S.C. Rule 37.1:

> An amicus curiae brief that brings to the attention of the Court relevant matter not already brought to its attention by the parties may be of considerable help to the Court. An amicus curiae brief that does not serve this purpose burdens the Court, and its filing is not favored.

That is precisely the purpose that led Amicus to file a brief in *Hamdi*, and it is precisely the purpose of the present *Cross-Motion*.

Amicus came before this Honorable Court in the interest of justice as a true friend, and appears herein by order of the Court. Given the weight and complexity of the issues in these cases, the fact that Amicus is a layman who proceeding *pro se*, and that the Court's order granting Amicus leave to appear was issued one week after hearing oral arguments on the *Motions to Dismiss* nearly two months after the present *Cross-Motion* was filed, it is surely frivolous to suggest that the Court's order was a mere caprice done in ignorance of basic civil procedures.

For his part, Amicus is well aware of how highly exceptional it is for a court to admit a layman as an amicus, let alone entertain an amicus brief as a motion for summary judgement in cases of the immense complexity and weight these cases have. Amicus is greatly honored by the Court's consideration and trust, deeply aware of his responsibility to comport himself as if he were a member of the bar and an officer of this Court, and very doubtful that he will remain an amicus for long if he fails in that responsibility or burdens the Court needlessly.

5. **Respondents' Opposition is False**

On the other hand, Respondents have engaged in a legal scorched earth campaign to prevent the issues herein from ever reaching a Court, let alone any just resolution – they are here to shield their criminal activities from the law. Their opposition herein is just the latest example, and of all the dishonest and fraudulent claims Respondents have made in these cases, Amicus believes that this one must surely be among the most transparently dishonest and silly:

> "Therefore, since Petitioners have not sought the relief amicus seeks in sections (a), (b) and (d) of his prayer for relief, those requests must be denied."
> *Resp. Opp*. at 2.

The Great Writ is fundamentally a petition for relief from unlawful treatment, and it is surely obvious that the only possible relief in such a case is lawful treatment. It is equally obvious that all of the petitions are pleas for some form of relief and, if a petition is found to be correct, that *some* form of relief is *appropriate*. CM4(d) simply reflects the fact that the treatment of these detainees is facially criminal, and hence, they are entitled to whatever relief is appropriate to the facts in each individual case.

Now the primary focus of Amicus is squarely on the common issues, and while I am deeply sympathetic to the plight of Petitioners' as individuals, my highest concern is to uphold the law. It is my understanding of the previous orders of this Court and the Executive Session that these cases are coordinated for the purpose of expeditiously resolving the common issues as a preliminary to either resolving them entirely if the Respondents prevail, or as a preliminary to resolving them individually on the discrete individual issues. This *Cross-Motion* is intended to cut the Gordian Knot on the common issues by showing that the Respondents are in fact engaged in a criminal conspiracy against the Petitioners and establish a foundation for resolving the individual cases to the satisfaction of the law. Amicus specifically omitted a proposed order because I felt that only counsel for Petitioners could speak for their individual interests, but I can nevertheless state with assurance that they are ALL entitled to some tangible form of relief within the jurisdiction of this court, and CM4(d) concisely reflects that analysis.

What relief any particular detainee is entitled to ultimately will have to be resolved individually. For some, that relief might be their outright or conditional release from detention; for some, it might be their indefinite detention as POWs protected by GPW; and for others it might be due process and a fair trial for their crimes. What is absolutely clear beyond any doubt is that ALL of them are the victims of criminal offenses pursuant to 18

USC § 2441, Geneva, and Hague art. 23(h), and hence, they are ALL entitled to some common relief in that regard.

**6.     The Common Relief Sought by the Cross-Motion**

At the outset, all of these detainees are entitled to the protections of GPW or GC, and CM4(a) asks the Court to do nothing more or less than to observe Geneva CA1, which requires that all parties "respect and ensure respect for [Geneva] in all circumstances."

CM4(b) is nothing more than a pragmatic measure intended to bring the conduct of the United States government into conformity with the law and resolve the issues of these cases as expeditiously as possible, on the theory that the best way to inhibit a crime is to rigorously apply the sanctions imposed by law. As Justice Holmes once explained:

> "[T]here can be no case in which the law-maker makes certain conduct criminal without his thereby showing a wish and purpose to prevent that conduct. Prevention would accordingly seem to be the chief and only universal purpose of punishment. The law threatens certain pains if you do certain things, intending thereby to give you a new motive for not doing them. If you persist in doing them, it has to inflict the pains in order that its threats may continue to be believed."
> *Oliver Wendell Holmes, Jr., The Common Law*, Project Gutenberg (2000) at 46, available at  http://promo.net/pg last checked 12/21/2004.

The relief sought by the *Cross-Motion* is of two types: civil relief on the writ of habeas for Petitioners, and criminal prosecution of Respondents for the crimes they have committed against them. Respondents falsely claim that the *Cross-Motion* "should be denied to the extent [Amicus] seeks relief in his own right or other than that sought by Petitioners," but the truth is that the *Cross-Motion* advances no such claims. The civil relief sought by Petitioners is the writ of habeas in regard to their unlawful detention, and the *Cross-Motion* is entirely consistent with their pleadings. An independent prosecutor is mandated not by any right of Amicus or Petitioners, but by the authority and duty of this Honorable Court to enforce the criminal laws of the United States. Those laws do not operate by right beyond the fact that they are enacted by the right of the people to establish the laws. Once enacted, the criminal laws operate by the *duty* of public officials to enforce

the laws pursuant to the authority delegated to them by the Constitution. The Cross-Motion was quite specific: "Amicus has no power to file a criminal complaint, but this honorable court has the authority to enforce the criminal laws of the United States pursuant to 18 U.S.C. § 3041." Geneva is also specific here:

> "Each High Contracting Party shall be under the obligation to search for persons alleged to have committed, or to have ordered to be committed, such grave breaches, and shall bring such persons, regardless of their nationality, before its own courts. It may also, if it prefers, and in accordance with the provisions of its own legislation, hand such persons over for trial to another High Contracting Party concerned, provided such High Contracting Party has made out a prima facie case.
> "Each High Contracting Party shall take measures necessary for the suppression of all acts contrary to the provisions of the present Convention other than the grave breaches defined in the following Article."
> *GPW art. 129, GC art. 146.*

Respondents' claims concerning Amicus raising new issues are also without merit, for the simple reason that amicus has raised no new issues. All the issues herein have been raised by the Respondents: they have constructed an elaborate web of fraudulent sophistry in order to shield their crimes from the law, and all Amicus has done is refute their arguments and tried to show what the law actually requires. Amicus would be a very poor friend indeed were he to confine himself to the role of parroting "Tastes Great!" and "Less Filling!" while bending over backwards to avoid any indelicate observations concerning the Emperor's disgraceful new wardrobe.

With respect to CM4(b) it should be noted that Canon 3(B)(3) of the *Code of Conduct for United States Judges* states: "A judge should initiate appropriate action when the judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a judge or lawyer." The *Cross-Motion* stated explicitly that counsel for Respondents were acting as agents in these crimes, and *Resp. Opp.* is no exception.

CM4(b) was based on the theory that the appropriate response to a Federal felony is arrest and indictment for the crime.

**7.       18 USC 2441(c)(2) & HR 23(h)**

CM4(c) asked this court to dismiss the *Motions to Dismiss* **with prejudice**. Clearly, the Motions to Dismiss are without merit, and Amicus believes there is simply no reason for this court to entertain any further pleading from Respondents that would delay or frustrate the resolution of these cases. Respondents have offered the court some vacuous arguments about the standing of an Amicus to do this or that, but the truth is very different.

Three years ago, Amicus began the effort that brought him here by investigating the relevant laws and treaties, and by August of 2002 I'd developed the basic theory of the issues which I've tried to present in my briefs.  The problem then was how to bring it, and I worked out a plan for a mandamus action very similar to the case that was eventually brought on behalf of Mr. Hamdan by LCDR Swift and Prof. Katyal – but my target was the conspiracy, not just the military tribunals.  I never brought that case because I was never able to convince myself that I would actually be able to handle the litigation all by myself *pro se*, and I was never able to find a lawyer who would take it on (and not for lack of trying). It was clear to me before I ever talked to an attorney that the major issue would be my standing, for the simple reason that the Respondents' only hope would be to prevent the issues even being considered, and indeed, the first thing that every attorney I've ever talked to about it has said is "You don't have standing."

My answer to that has always been the same – that there are in fact viable grounds for arguing that I *do* have standing, but it isn't even necessary because it is the *Respondents* who have a problem with standing here, not me. The reason for that is simple: **no criminal has any standing to enter a court of LAW and use the LAW ITSELF as a weapon to aid, abet, or *commit* a CRIME**  —not even if the criminal happens to be an official of the United States government and / or an attorney. That is *precisely* the disgraceful spectacle that confronts us here, and Amicus believes it is long past time for it to be stopped.

If the Supreme Court's decisions in *Hamdi, Rasul, Padilla, and Gherebi* stand for anything, they stand for the notion that EVERYONE has a fundamental right to due process of LAW regardless of station or nationality. Amicus believes that the Supreme Court gave Respondents a gentle yet very pointed hint to conform their actions and policies to the LAW. Instead, Respondents have contemptuously and arrogantly responded by applying a fresh coat of paint to the fraudulent apologies for their crimes. As the Cross-Motion explained, all this represents a conspiracy by Respondents and counsel to commit offenses pursuant to 18 USC 2441(c)(2) – their only *lawful* response to the *Cross-Motion* was to concede.

When the US Constitution was signed, Benjamin Franklin was asked the form of the new government by a spectator outside the hall; his reply was**:** *"A Republic, if you can keep it."* Amicus believes Respondents conspiracy is our latest and severest test, and that it is high time to *get busy,* lest we fail. It is that conviction which has driven Amicus forward from 11/13/2001 to date.

Respondents plead for deference, but criminals deserve none. They plead for the "special competence" of military commanders, but every military engagement ever fought was LOST by military commanders, and there is nothing military about Respondents' conspiracy: they cut the military JAGs out of the loop and turned the White House, DoD, DOJ, and the Intelligence Agencies into **one big crime syndicate** on the basis of crack-pot political theories (see below) that are military only in the sense of being motivated by the urge to use the military for criminal purposes in the furtherance of particular political and economic ambitions.

All of that will have to be sorted out, and that is why a truly independent prosecutor is absolutely imperative. Amicus believes it is equally imperative that this court not allow Respondents to have any say in who that prosecutor is: whoever it is must be untouchable by Respondents.

8.     **The Conspiracy to Violate Geneva**

Respondents' conspiracy to violate the Geneva conventions implicates The White House, DOJ, DoD, The State Department, and the intelligence agencies. Guantanamo Bay is merely their showplace: how extensive the Gulag really is and how many prisoners there really are is anyone's guess, but news reports suggest something in the range of 5,000 to 10,000 prisoners.

The conspiracy was first and foremost a conspiracy of *lawyers* acting on the basis of a radical "legal theory" to the effect that international law is either "obsolete" or not really law at all, or that it says the exact opposite of what it does say, *ETC*. The source text appears to have been Crona and Richardson*, A New Legal and Military Approach to Terrorism*, 21 Okla. City U.L. Rev. 349 (1996).

The New York Times recently published a two part series that gives the fullest account to date as to how the conspiracy began. *See* Tim Golden, *After Terror, A Secret Rewriting of Military Law*, NY Times (10/24/2004), and *After Terror, Slow Pace of Pentagon's Courts Set Off Friction at White House*, NY Times (10/25/2004); *see also* Eugene R. Fidell, *Military Commissions & Administrative Law*, 6 Green Bag 2d 379 (2003).

9.     **Hamdan and Abu Ali Exhibit Conclusive Support for the Cross-Motion**

The opinion of Judge Robertson in *Hamdan* conclusively supports the allegations of the *Cross-Motion* pursuant to 18 USC § 2441. Amicus believes the opinion was a very outstanding and sound analysis on the major points, but I also believe it was mistaken on something important – it is the opinion of Amicus that the availability of appeal to an independent and lawfully constituted judicial authority are required by 18 USC 2441(c)(2) pursuant to HR art. 23(h) and the *Martens Clause*. I also believe that having found that Hamdan was entitled to POW status, the court should have issued an injunction requiring

him that he be treated accordingly, and that no request for a stay of such an injunction should be entertained.

Respondents simply have no case left to them, and that fact was immediately apparent from their reaction to Judge Robertson's opinion: DOJ immediately commenced a public disinformation and smear campaign. *See* e.g.:

> DOJ Press Release #735, *Statement Of Mark Corallo, Director Of Public Affairs, On The Hamdan Ruling* (11/8/2004), available at (last checked 12/23/2004):
> http://www.usdoj.gov/opa/pr/2004/November/04_opa_735.htm
>
> *Prepared Remarks of Attorney General John Ashcroft to the Federalist Society* (11/12/2004), available at (last checked 12/23/2004):
> http://www.usdoj.gov/ag/speeches/2004/111204federalist.htm

Amicus believes the opinions those statements express in regard to *Hamdan* are fraudulent and contemptible – the *only* purpose of the Geneva Conventions is to *ameliorate suffering in war*, PERIOD. They are also stupid, becasue hoisting the black flag does not exactly give anyone an incentive to obey Geneva, and the court should carefully note that the incentives actually provided by Geneva are criminal prosecution for violations according to law, and not "diplomatic enforcement" nor any of Respondents' legion of other frauds and fallacies. *See also* the outstanding briefs of the distinguished amici in support of Petitioners in *Hamdan,* which Amicus hereby incorporates by reference in full.

The latest opinion in Abu Ali also strongly supports this Cross-Motion. Amicus has not had time to study it closely yet, being preoccupied with the drafting of this reply, but it appears to entail violations of 18 USC 2441 pursuant to HR art. 23(h) and Geneva CA 3.

**10.     The Cross-Motion is *Necessary and Appropriate* to Preserve the Rule of Law**

This Honorable Court has heard the attitude of Respondents towards charitable little old ladies in Switzerland at the recent hearing on the *Motions to Dismiss,* and the following day, Judge Leon was told their attitude towards evidence obtained by coercion and torture. Respondents are not merely criminals, they are *wanton* criminals, and they may bellow and posture all they want about their duty to protect the nation from attack, but the facts will

still remain that what they are doing to these detainees is *explicitly prohibited by law*, that their highest duty is to *faithfully execute* the laws, and that military duty, discipline, and efficiency are all critically dependant on scrupulous obedience to the law. History teaches that the most certain method of national suicide is precisely to allow the leaders of a nation to wield absolute powers unchecked by the rule of law, and the founding fathers of *this* nation were not confused about it:

> "The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right."
> *Marbury v. Madison*, 5 U.S. 137 (1803) (Marshall, C.J.).

At the conclusion of my Hamdi brief, I posed some questions about roasting detainees alive over an open fire. We might now extend that question to the children and wives of detainees, and ask: *where do we draw the line?*

The contention here is that the line has already been drawn: the line is THE LAW, and in particular, 18 USC § 2441, Geneva 1949, Hague 1907, the London (Nuremberg) Charter of the IMT (1945), ICAT, and ICCPR.

**11.     Some Thoughts Going Forward**

Amicus has been scrambling to cope with this Courts granting him leave to appear, but I would like to offer the court some brief thoughts going forward:

  a.     If the Court grants this *Cross-Motion*, as Amicus believes it should, Amicus believes the Court should consider holding a hearing or conference on the drafting of a preliminary order including the parties and Amicus, and invite the submission of supplemental brief on the shape of the preliminary order by all concerned.

  b.     The purpose of the preliminary order should be to provide initial injunctive relief and define a process for arriving at a final order to resolve the

- 13 -

common issues and return the cases to the assigned judges for final resolution of the individual issues. It should also look at joining related cases.

     c.     Amicus believes the Court should consider ordering the Clerk's office to improve the docketing arrangements for these cases. The Court, Respondents, and Amicus all have to post their filings in ten cases separately at present, and Amicus doesn't enjoy the services of law clerks or legal secretaries. In principle, it should be technically feasible to set up a single docket for *In re Guantanamo Detainee Cases* that would post all filings to related cases automatically, and I think that it should be seriously considered since we are potentially facing hundreds or even thousands of additional cases.

May it please the Court, not being an attorney, Amicus offers those three points merely as suggestions and leaves the details to the wisdom and expertise of this Honorable Court.

## CONCLUSION

The poverty of Respondents' opposition reflects only the poverty of their brief. This *Cross-Motion* is proved, and judgement should issue.

DATED: December 23, 2004                       Respectfully submitted,

                                       / s /

                                 CHARLES B. GITTINGS JR.,
                                    *pro se*
                               453 Totem Pole Road
                               Manson, WA  98831

                               SSN: XXX-XX-3461

                               cbgittings@yahoo.com

                               (509) 682-2844

                               In memoriam
                        ELIAS T. ("LILE") JACKS
                            (1924-1973)