## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KHALED A.F. AL ODAH, *et al.*,<br><br>　　　Petitioners,<br><br>　　　v.<br><br>GEORGE W. BUSH, President of the United States, *et al.*,<br><br>　　　Respondents. | Civil Action No. 02-828 (CKK) |
| IN RE:<br><br>GUANTANAMO BAY DETAINEE LITIGATION | Misc. No. 08-442 (TFH) |

## MEMORANDUM OPINION
(January 6, 2009)

Fouad Mahmoud Al Rabiah ("Al Rabiah") and Fayiz Mohammed Ahmen Al Kandari

("Al Kandari") (collectively, "Petitioners") are two of the detainees who are currently held by the

United States Government at Guantanamo Bay, Cuba, as unlawful enemy combatants.

Petitioners have filed habeas petitions which are currently pending before this Court.  In October

2008, Petitioners were also charged with violations of the laws of war and now face the prospect

of trial by military commissions in accordance with the Military Commissions Act, 10 U.S.C. §

948a - 950w (the "MCA").    Currently pending before the Court is the Government's Motion to

Dismiss or, in the alternative, to Hold in Abeyance, Petitioners' habeas petitions pending

completion of their military commission proceedings.[1]

After thoroughly reviewing the Government's Motion, Petitioner's Opposition, and the Government's Reply, as well as the relevant case law and applicable statutory authority, the Court finds that a stay of Petitioners' habeas cases is warranted, but only to the extent that the charges against Petitioners are ultimately referred to military commissions for further proceedings. Accordingly, the Court shall GRANT-IN-PART and DENY-IN-PART the Government's Motion to hold the petitions in abeyance pending completion of military commission proceedings, with a stay to commence only if and when the charges against Petitioners are referred to military commissions, and shall DENY WITHOUT PREJUDICE the Government's Motion to Dismiss, for the following reasons.

## I. BACKGROUND

*A.     Statutory Background*

In October 2006, Congress enacted the MCA to establish the procedures governing the use of military commissions for trying alien unlawful enemy combatants engaged in hostilities against the United States. The procedures governing these military commissions are set forth in both the MCA and the Rules for Military Commissions. *See* Rules for Military Commissions ("R.M.C.") 101(a) ("[t]hese rules govern the procedures and punishments in all trials by military commissions of alien unlawful enemy combatants engaged in hostilities against the United States as defined in [the MCA]").[2]

---

[1] There are two other petitioners in the above-captioned case who have not been charged pursuant to the MCA and who are not subject to the Government's Motion.

[2] The Rules for Military Commissions are available on a website hosted by the Department of Defense, http://www.defenselink.mil/news/commissionsmanual.html.

The military commission process begins with a "swearing of charges" against a defendant.  R.M.C. 307 ("[a]ny person subject to the Code may swear charges").  The charges are then referred to the Secretary of Defense or any officer or official of the United States designated by the Secretary to receive such charges (the "Convening Authority"), who decides whether to dismiss any or all of the charges or refer any or all of them to a military commission. 10 U.S.C. § 948(h); R.M.C. 401(a).  The Convening Authority must make this determination "in a prompt manner," but no deadline for making this determination is specified.  R.M.C. 401(b).  Assuming the Convening Authority refers one or more charges to a military commission, the defendant receives certain speedy trial rights.  For example, the defendant must be arraigned within 30 days after receiving service of the charges, and a military judge must announce the assembly of a military commission within 120 days.  R.M.C. 707(a).

Military commissions under the MCA are composed of at least five military officers, 10 U.S.C. § 948m, and are presided over by a military judge, *id.* § 948j.  In addition to hearing evidence related to whether the defendant violated the laws of war or other offenses triable by military commission, *id.* § 948(a), a military commission may also make an independent determination as to whether the defendant is an unlawful enemy combatant, defined as "a person who has engaged in hostilities or who has purposefully and materially supported hostilities against the United States or its co-belligerents who is not a lawful enemy combatant (including a person who is part of the Taliban, al Qaeda, or associated forces)."  10 U.S.C. §§ 948a(1)(A)(i); 948d(a).

The MCA affords a defendant three levels of appellate review if convicted.  First, in all instances where the defendant is found guilty by the military commission, the case is reviewed by

the Court of Military Commission Review ("CMCR"), comprised of at least three military judges

(or civilians with "comparable qualifications" appointed by the Secretary of Defense). *Id.* §§

950c(a), 950f.  The CMCR may "act only with respect to matters of law." *Id.* § 950f(c).  A

defendant may then appeal as of right to the United States Court of Appeals for the District of

Columbia Circuit. *Id.* § 950g.  The D.C. Circuit has jurisdiction to review "whether the final

decision [of the military commission] was consistent with the standards and procedures specified

[in the MCA]" and with "the Constitution and the laws of the United States." *Id.* § 950g(c).

Finally, a defendant may seek review of the D.C. Circuit's decision by writ of *certiorari* to the

United States Supreme Court. *Id.* § 950g(d).[3]

> B.      *Factual and Procedural Background*

On October 21, 2008, Petitioners were formally charged with having violated the laws of

war under the MCA.  Each Petitioner was charged with two offenses:  providing material support

for terrorism in violation of 10 U.S.C. § 950v(b)(25), and conspiracy in violation of 10 U.S.C. §

950v(b)(28).  As reflected in their charge sheets, Al Rabiah is charged with traveling between

Kuwait and Afghanistan to meet with, and provide funds to, Usama Bin Laden,[4] soliciting funds

from individuals in Kuwait for the purpose of giving money to al Qaeda, and managing and

distributing supplies from an al Qaeda supply depot at Tora Bora, Afghanistan.  *See* Gov't's

Mot., Ex. A at 3-4 (10/21/08 Al Rabiah Charge Sheet).  Al Kandari is charged with visiting the al

---

[3] The Government suggests that there is a fourth level of appellate review because the Convening Authority may review convictions and lower sentences based on his or her "sole discretion and prerogative."  *See* Gov't's Mot. at 4 (citing 10 U.S.C. § 950b); 10 U.S.C. § 950b(c)(1).

[4] Although often spelled "Osama" Bin Laden, the charge sheets use this alternative spelling.

Farouq training camp in Afghanistan, providing instruction to Al Qaeda members and trainees present at the camp, serving as an advisor to Usama Bin Laden, and producing recruitment tapes that encouraged others to join al Qaeda and participate in jihad.  *Id.*, Ex. B at 3 (10/21/08  Al Kandari Charge Sheet).  The charges against Al Kandari were subsequently amended on December 3, 2008, to add two additional counts of providing material support for terrorism and conspiracy, respectively.  *See* Gov't's Reply at 8 n.2 & Ex. A at 1-3 (12/3/08  Al Kandari Amended Charge Sheet).  The amended charges allege that Al Kandari traveled to Tora Bora, Afghanistan, where he fought with Al Qaeda forces.  *Id.* at 4.

These charge sheets (including the Al Kandari's amended charge sheet) are currently under consideration by the Convening Authority.  *See* Gov't's Mot. at 5; Gov't's Reply at 8 n.2. The Government does *not* indicate that the charges have been referred by the Convening Authority to military commissions, and the Government concedes that there is no deadline by which the Convening Authority must decide whether to dismiss or approve the charges.  *See* Gov't's Reply at 8 (referencing the "lack of a deadline for the Convening Authority to complete its review and refer charges to a military commission").

On November 26, 2008, the Government filed a Motion to Dismiss or, in the alternative, Hold in Abeyance the Petitioners' habeas petitions pending completion of the military commission's proceedings.  Petitioners filed an Opposition to the Government's Motion on December 8, 2008, and the Government filed a Reply on December 18, 2008.  The Government's Motion is thus fully briefed and ripe for decision.

## II.  LEGAL STANDARDS AND DISCUSSION

*A.      Abstention During Military Commission Proceedings*

Courts ordinarily abstain from considering habeas petitions or requests for other equitable relief prior to the conclusion of a defendant's criminal proceedings.  As the Government's motion correctly explains, the United States Supreme Court's decision *Schlesinger v. Councilman* confirmed that such abstention is appropriate even in the context of military prisoners.  420 U.S. 738, 758 (1975).  In that case, Councilman was a serviceman who brought an action in federal district court seeking an injunction to prevent his court-martial for allegedly selling, transferring, and possessing marihuana.  *Id.* at 739.  Councilman argued that the court-martial lacked jurisdiction over his alleged offenses, and that he "[would] suffer great irreparable damage in that he [might] be deprived of his liberty without due process of law" if the district court did not enjoin his court-martial proceedings.  *Id.* at 742 (quotation marks omitted).  The district court granted the injunction and the Tenth Circuit Court of Appeals affirmed.  *Id.* at 739.

The Supreme Court reversed, finding "no injustice in requiring respondent to submit to a system established by Congress and carefully designed to protect not only military interests but his legitimate interests as well."  *Id.* at 759-760.  The Court held that Congress impliedly expressed its view that "the military court system generally is adequate to and responsibly will perform its assigned task," and that "this congressional judgment must be respected."  *Councilman* at 758.  The Court justified its holding based on the abstention principle that "federal courts normally will not entertain habeas petitions by military prisoners unless all available military remedies have been exhausted."  *Id.* at 758.

The present case is not the first or even the second to address so-called "*Councilman*

abstention" in the context of Guantanamo Bay detainees.  On November 24, 2008, Judge John D.

Bates issued a stay of a petitioner's habeas case during the pendency of his military commission

proceedings.  *See Khadr v. Bush*, No. 04-1136, 2008 U.S. Dist. LEXIS 95473 at *11 - *14

(D.D.C. Nov. 24, 2008).  Relying on *Councilman*, Judge Bates held that courts should respect the

system of military commissions established by Congress and the President of the United States.

*Id.* at *14 ("[a]lthough *Councilman* itself acknowledged this comity-based consideration in the

context of a military justice system designed by Congress to try members of the U.S. military, the

consideration is equally, if not more, relevant when Congress designs a military justice system to

try alien unlawful enemy combatants").  Judge Bates also found that the petitioner's habeas

proceedings threatened to interfere with the military commission's proceedings.  *Id.* at *13 ("the

question of enemy combatancy can be raised in the military commission proceeding . . .

[c]onsequently, *Councilman* abstention would seem appropriate with respect to [petitioner's

habeas petition] because any rulings by this Court . . . would necessarily affect, and possibly

interfere with, the military commission proceeding.").  Accordingly, Judge Bates held that

"abstention is appropriate [] to the extent that this Court's consideration of petitioner's motion

would interfere with the military commission proceeding . . . ."  *Id.* at *12.[5]

On July 18, 2008, Judge James Robertson also addressed *Councilman* abstention in the

context of a motion for a preliminary injunction filed by a petitioner who sought to stop his

military commission proceedings.  *See Hamdan v. Gates*, 565 F. Supp. 2d 130 (D.D.C. 2008).

---

[5] Petitioners in this case seek to distinguish *Khadr* on the basis that it did not involve "habeas petitions challenging executive detention."  Pet'r's Opp'n at 7.  Petitioners are mistaken. The petitioner's motion in *Khadr* sought, *inter alia*, a writ of habeas corpus.  *See Khadr*, 2008 U.S. Dist. LEXIS 95473 at * 7.

Denying this motion, Judge Robertson held that *Councilman* "requires the courts to respect the balance that Congress has struck in creating a military justice system . . .," *id.* at 136, and that the MCA was worthy of deference because it was "designed . . . by a Congress that . . . act[ed] according to guidelines laid down by the Supreme Court." *Id.* (quoting *Hamdan*, 344 F. Supp. 2d 152, 157 (D.D.C. 2004)).

This Court is similarly persuaded that abstention of Petitioners' habeas cases during the pendency of their military commission proceedings is warranted.  Abstention reflects the appropriate level of deference for a system enacted by Congress, signed into law by the President, and designed in accordance with the Supreme Court's precedents.  *See Hamdan v. Gates*, 565 F. Supp. 2d 130, 136 (D.D.C. 2008) (quoting *New v. Cohen*, 129 F.3d 639, 643 (D.C. Cir. 1997)) ("[t]he Supreme court's decision in *Councilman* requires federal courts to give 'due respect to the autonomous military judicial system created by Congress.'").  Abstention also eliminates the potential for conflicting findings or rulings that would arise if the Petitioners' habeas cases and military commissions proceed simultaneously.  Petitioners even concede that conflicting findings may arise as to whether Petitioners are properly characterized as unlawful enemy combatants. *See* Pet'r's Opp'n at 7 ("[t]o be sure, Petitioners' alleged status as 'enemy combatants' would be a necessary predicate to any jurisdiction that a future military commission might seek to exercise").

The Court is also persuaded that Petitioners are not irreparably harmed by this Court's abstention while military commissions proceed with the charges against Petitioners.  The inconvenience of any criminal prosecution, including those associated with the military commissions, is insufficient, standing alone, to warrant federal court intervention.  *Cf. Younger v.*

8

*Harris*, 401 U.S. 37, 46 (1971) (holding that an injunction against criminal enforcement, even if the defendant believes the statute which he is prosecuted is unconstitutional, is inappropriate absent an unusual circumstance requiring equitable relief). The various speedy trial rights built into the Rules of Military Commissions also ensure that Petitioners are not blocked *ad infinitum* from pursuing habeas relief, *see, e.g.*, R.M.C. 707(a), and Petitioners will have the benefit of the various procedural safeguards built into the MCA system once the military commission proceedings have concluded. As Judge Robertson recently explained,

> [i]f the Military Commission judge gets it wrong, his error may be corrected by the CMCR. If the CMCR gets it wrong, it may be corrected by the D.C. Circuit. And if the D.C. Circuit gets it wrong, the Supreme Court may grant a writ of *certiorari*.

*Hamdan*, 565 F. Supp. 2d at 137. The Court therefore finds that abstention during the pendency of military commission proceedings is "'[i]n the interest of judicial economy and avoid[s] unnecessary litigation.'" *Khadr*, 2008 U.S. Dist. LEXIS 95473 at * 23 (quoting *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 199 (D.D.C. 2005)).

Although Petitioners raise numerous arguments as to why abstention is inappropriate in this case, the Court finds none persuasive. For example, Petitioners argue that exhaustion and comity doctrines are inapplicable in the context of the military commissions because there is no remedy before the commissions that allow the Petitioners to challenge their detentions and, even if acquitted, there is no guarantee that acquittal will result in their release. *See* Pet'r's Opp'n at 5. Petitioners seek to distinguish *Councilman* on the basis that

> the plaintiff in *Councilman* was directly challenging the court-martial proceeding that was the sole basis for his detention. Al Rabiah and Al Kandari, on the other hand, are not in pretrial confinement reviewable by a military court, but instead are held in executive detention as 'enemy combatants.'

9

*Id*. at 5-6.

Petitioners are correct that military commissions under the MCA are convened to consider whether they have violated the laws of war and not whether they should be released from custody.  Nevertheless, the commissions are still entitled to deference because the Court's habeas proceedings may interfere with those proceedings.  For example, the essential inquiry in Petitioners' habeas cases – whether they are properly characterized as unlawful enemy combatants – is the same inquiry that the commissions may independently determine as part of their jurisdictional inquiry.  *See* 10 U.S.C. §§ 948a(1)(A)(i); 948d(a).  The Court's proceedings may also produce rulings on the production of discovery and/or exculpatory information that diverge from those of the military commissions.[6]  The decision in *Councilman* sought to avoid this type of interference by requiring defendants to exhaust their criminal (or military) proceedings prior to seeking equitable relief, without regard to the type of equitable relief sought.  *See Councilman,* 420 U.S. at 756-58.  The Court therefore rejects Petitioners' argument that the differences between the relief sought before this Court (their release) and the military commissions (their non-conviction) distinguishes *Councilman* or otherwise suggests that this Court should not defer to the system of military commissions designed by Congress and the President.  *See Hamdan*, 565 F. Supp. 2d at 136) ("*Councilman* involved court-martial proceedings against a U.S. service member, to be sure, and not a military commission, but its central rationale is applicable here").

---

[6] Petitioners argue that "the government's motion does not address how the ongoing habeas proceedings would interfere with any military commission proceedings . . . ."  Pet'r's Opp'n at 6.  That is not so.  *See* Gov't's Mot. at 13-16; Gov't's Reply at 9-11.

Petitioners also argue that *Councilman* abstention "is not required in a case where a challenge is made to the jurisdiction of the military court based on the 'status of the persons as to whom the military asserted its power.'"  Pet'r's Opp'n at 6 (quoting *Councilman*, 470 U.S. at 759).  Petitioners further argue, by implication, that their cases fall within this exception because "[a] military commission has no jurisdiction over a person who is not an unlawful enemy combatant . . . and this Court indisputably has jurisdiction to consider Petitioners' challenges to their alleged status as enemy combatants."  *Id.*  The Court is unpersuaded.

*Councilman* recognized an exception to the abstention doctrine when a petitioner "raise[s] substantial arguments that a military tribunal lacks personal jurisdiction over [him]."  *Hamdan v. Rumsfeld*, 548 U.S. 557, 589 n.20 (2006).  A "substantial" question requires "a petitioner to present a 'constitutional question [that] turn[s] on the status of the persons as to whom the military asserted its power.'"  *Khadr*, 2008 U.S. Dist. LEXIS 95473 at *15 (quoting *Councilman*, 420 U.S. at 759).  The Court agrees with the Government that Petitioners have not presented a substantial constitutional question about the MCA or the military commissions that would be convened to try Petitioners.  *See* Gov't's Reply at 5 ("whether Congress ha[s] the power to try civilians via military courts martial . . . has already been settled: the Supreme Court held that Congress has the authority under the Constitution to authorize the trials by military commission of enemy combatants accused of law-of-war violations") (citing *Ex parte Quirin*, 317 U.S. 1, 28-31 (1942)).  *See also Khadr*, 2008 U.S. Dist. LEXIS 95473 at *22 (rejecting the petitioner's argument that the exception to *Councilman* abstention applied and holding that "petitioner's challenge to the jurisdiction of the military commission does not raise a substantial constitutional challenge based on status within this narrow exception to *Councilman*

abstention").  To the extent Petitioners are arguing that the commissions have no jurisdiction

over them because they are not properly characterized as unlawful enemy combatants, that

argument may be fully addressed by the military commissions in the first instance, and then

addressed, if necessary, by this Court following the conclusion of the military commission

proceedings.

> B.    *Timing of Abstention in the Context of Military Commission Proceedings*

Although Petitioners have failed to persuade this Court that abstention is inappropriate in

this case, the Court is persuaded by Petitioners' arguments concerning the timing of such

abstention.  In particular, Petitioners' Opposition repeatedly emphasizes that the Convening

Authority has not yet referred any of the sworn charges against Petitioners to a military

commission, and therefore, a military commission may *never* be convened.  Pet'r's Opp'n at 2-3.

Petitioners argue that, "[t]o dismiss or stay their habeas petitions based on speculation about

what might happen next would be inappropriate and inconsistent with" the Supreme Court's

ruling in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008).  *Id.* at 4.  In response, the Government

argues that "[t]he lack of a deadline for the Convening Authority to complete its review and refer

charges to a military commission . . . does not militate against abstention.  For one thing . . .

moving forward in habeas during the pendency of sworn charges represents the potential for

interference with the pending military commission proceedings."  Gov't Reply at 8.  The Court

agrees with Petitioners.[7]

As described above, a Convening Authority may dismiss charges that have been sworn

---

[7] The Court notes that Petitioners' Opposition casts this argument in the context of whether or not a stay is appropriate, but the Court finds that it is more appropriately directed at when, not if, a stay should be entered.

against a defendant or may refer them to a military commission for further proceedings.  10 U.S.C. § 948(h); R.M.C. 401(a).  There is no deadline for the Convening Authority to make this determination, R.M.C. 401(b), and without the Convening Authority's referral, and military commission is not convened.  The Government's Motion does not indicate that the Convening Authority has referred the charges against Petitioners to a military commission in this case.

The Court finds that it cannot interfere with the findings or rulings of a military commission that does not, and may never, exist.  The Court also finds that it owes no deference to a system that may never be implicated by the charges against Petitioners.  *Cf. Khadr*, 2008 U.S. Dist. LEXIS 95473 at *4 (entering stay *after* charges had been referred to a commission); *Hamdan*, 565 F. Supp. 2d at 133 (denying motion for injunction *after* charges had been referred to a commission).  Entry of an immediate stay under these circumstances (for reasons that may never materialize) is inconsistent with the Supreme Court's admonition that "[t]he detainees in these cases are entitled to a prompt habeas corpus hearing."  *Boumedine*, 128 S. Ct. at 2275. Accordingly, although the Court shall enter a stay of petitioner's habeas cases, the stay shall *not* commence unless and until the Convening Authority refers the charges sworn against Petitioners to military commissions.  Unless and until such charges are referred by the Convening Authority, the parties must continue to proceed fully with Petitioners' habeas cases.

### III.  CONCLUSION

For the reasons stated above, the Court shall GRANT-IN-PART and DENY-IN-PART the Government's Motion to hold the petitions in abeyance pending completion of military commission proceedings, with a stay becoming effective only upon the referral of charges against Petitioners to military commissions, and shall DENY WITHOUT PREJUDICE the

13

Government's Motion to Dismiss.  If and when the charges against Petitioners are referred to

military commissions, the Government shall file a notice with the Court and shall file status

reports every 60 days thereafter.  Unless and until the charges against Petitioners are referred to

military commissions, the parties must proceed fully with Petitioners' habeas cases.  An

appropriate Order accompanies this Memorandum Opinion.

Date: January 6, 2009

                                        /s/
                                **COLLEEN KOLLAR-KOTELLY**
                                United States District Judge