# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAWZI KHALED A.F. AL ODAH, *et al.*, <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES, <br><br> Respondents. | Civil Action No. 02-828 (CKK) |

**ORDER DENYING RESPONDENTS' MOTION FOR RECONSIDERATION
OF THE COURT'S FEBRUARY 12, 2009 ORDER**
(April 6, 2009)

*[T]here are standards which a Government counsel should meet to uphold the dignity of the Government . . . their conduct [must] reflect that they are officers of the court as well as advocates for a cause...*

*-Taylor v. United States*, 413 F.2d 1095, 1096 (D.C. Cir. 1969).

The instant Motion for Reconsideration has its origins in *three* previous Orders issued by the Court that required Respondents to file an Opposition to a motion filed by Petitioners titled Motion for Production of Complete Declassified Factual Returns. Respondents' counsel violated all three Orders by failing to file an Opposition. The third of the Court's Orders specifically warned Respondents that the Court would consider sanctions for further non-compliance. Not only did Respondents' counsel fail to file an Opposition as ordered by the Court, he never moved for an extension or even supplied an explanation for his conduct.

The Court held a closed-session Status Hearing on February 11, 2009, during which the Court explained to Respondents' counsel and his supervisor (whom the Court requested to be in attendance) that its Orders were not aspirational, and that counsel's compliance was not optional. The Court expects its Orders to be followed and, where additional time is needed for compliance,

that counsel will appropriately move for extensions. The Court further explained that the course of conduct chosen by counsel–simply ignoring the Orders of the Court as if they were not issued–would not be tolerated.

Taking the foregoing into consideration, on February 12, 2009, the Court issued an Order requiring Respondents to assign new counsel to this case. The Court explained that "Respondents' counsel ha[d] repeatedly flouted the deadlines set by [the] Court and failed to comply with its Scheduling Order," and that "[t]he Court ha[d] lost confidence in Respondents' current counsel[] and . . . [did] not view his representations as credible." Order at 7-8 (Feb. 12, 2009). The Court also emphasized that the credibility of counsel's representations in this matter (which involves the detention of four individuals at Guantanamo Bay) was particularly important because Petitioners' counsel is not in a position to independently verify many of Respondents' representations concerning, among other things, the production of discovery. *Id.* at 8.

The message imparted to counsel and his supervisor seems to have been only partially received. On March 9, 2009, Respondents (through counsel's supervisor) filed the instant Motion for Reconsideration seeking to allow Respondents' counsel–the attorney in whom the Court has lost all confidence–to continue with his participation in this case. Because Respondents' Motion is based on a shockingly revisionist version of the events that transpired, and because it leaves the impression that the Court's message to counsel's supervisor at the February 11, 2009 Status Hearing may not have been fully understood, the Court provides a detailed description of what actually transpired and a further explanation as to why it was appropriate to exclude Respondents' counsel from further participation in this case.

**BACKGROUND**

On January 7, 2009, the Court entered a Scheduling Order covering "all motions, filings, or other disclosures" based in part on a Joint Status Report and proposed schedule submitted by the parties. *See* Scheduling Order at 1 (Jan. 7, 2009), Docket No. [433]. As part of the Scheduling Order, the Court adopted the parties' proposal for Petitioners to file a Motion for Production of Complete Declassified Factual Returns or Adequate Substitutes on or before January 9, 2009. *Id.* The Court also required Petitioners to identify the portions of each return that they specifically were moving to have declassified, and under a heading "High Priority Items," identify the items they considered most important to their ability to present a defense. *Id.* The parties' Joint Status Report failed to propose a date for Respondents' Opposition, so the Court selected January 23, 2009, without the benefit of knowing how extensive Petitioners' declassification requests might be. The Scheduling Order required Respondents, by that date, to file an Opposition that "include[d] the declassified return[s] and relevant attachments as an exhibit, and [] provide[d] a justification for each item that was identified in Petitioners' Motion that Respondents have determined not to declassify." *Id.* at 2.

On January 23, 2009, Respondents filed an Opposition to Petitioners' Motion and a Motion for Clarification. The Court struck the Opposition as non-responsive because Respondents failed to include the declassified returns as exhibits and failed to provide a justification for each item that was identified in Petitioners' Motion that Respondents determined not to declassify. *See* Min. Order dated Jan. 26, 2009. The Court also denied without prejudice Respondents' Motion for Clarification because the motion was an improperly denominated request for an extension of time that failed to include the "demonstrable

extraordinary circumstances" required to obtain such extensions, as set forth in the Court's Scheduling Order.  *Id.*  The Court nevertheless authorized Respondents to file their Opposition and exhibits, as identified in the Court's Scheduling Order, no later than January 28, 2009.

Respondents filed a Motion for an Extension on January 28, 2009, apologizing to the Court for "failing to grasp the import of the Court's January 7, 2009 Scheduling Order as it pertained to a declassified version of the factual return."  Resp'ts' [451] Mot. at 1-2.  Respondents further explained that extraordinary circumstances warranted an extension until February 6, 2009, because it was "impossible" for Respondents to produce the declassified returns by October 28, 2009.  On January 30, 2009, the Court granted Respondents' request for an extension and adopted February 6, 2009 – the date Respondents proposed – as the date for Respondents' compliance.  *See* Order at 5 (Jan. 30, 2009).  The Court repeated that "Respondents [were required to] file their Opposition to Petitioners' Motion for More Complete Declassified Factual Returns no later than February 6, 2009" and warned counsel that their non-compliance "may result in sanctions, including possible exclusion of allegations or documents going forward."  *Id.*

Incredibly, Respondents' counsel failed to file an Opposition to Petitioners' Motion.  Rather, on February 6, 2009, Respondents filed partially declassified factual returns and several declarations explaining why they did not declassify certain types of information.  Respondents submitted several additional but untimely declarations on February 10, 2009.  Because Respondents' counsel failed to file an Opposition, the Court had no document in its possession that linked the items that Respondents decided not to declassify with Respondents' justifications for not declassifying them.  In other words, Respondents apparently believed that the Court

4

would assume the burden of reviewing the approximately 1,300 pages of documents that constituted the declassified factual returns and apply the justifications in the declarations as it found necessary. Equally as troubling, the absence of an Opposition meant that Respondents failed to provide the Court with any legal briefing to justify their redactions from the declassified factual returns.

The Court held a closed-session Status Hearing on February 11, 2009. The Court began the hearing by explaining that Respondents' counsel had violated three Court Orders, and advised counsel's supervisor that counsel had lost all credibility with the Court. The Court further advised counsel's supervisor that Respondents should appoint different counsel. At the end of the hearing, however, counsel's supervisor sought to justify the non-compliance of Respondent's counsel by offering the flippant justification that Respondents were very busy with other Guantanamo Bay cases, and that counsel did not have time to file the Opposition or (apparently) an appropriate motion for an extension. The Court explained that counsel's workload was not an acceptable excuse for violating the Orders of this Court and would not be tolerated. The Court's exchange with counsel's supervisor at the end of the hearing convinced the Court that it should order Respondents to appoint new counsel to this case (rather than suggest the same) because counsel's supervisor did not seem to grasp the import of what had transpired.[1]

The Court considered other sanctions but believed removal of counsel was most appropriate. In its January 30, 2009 Order, for example, the Court warned Respondents' counsel

---

[1] The Court was also forced to schedule yet another due date (the fourth) for submission of Respondents' Opposition.

that further non-compliance could result in sanctions such as exclusion of evidence in future merits proceedings. *See* Order at 5 (Jan. 30, 2009). The Court decided against issuing this type of sanction, however, given the D.C. Circuit's well-established guidance that lower courts should first consider sanctions against an attorney prior to sanctions against his client. *See Shea v. Donohoe Constr. Co., Inc.*, 795 F.2d 1071, 1076-77 (D.C. Cir. 1986) ("[w]hen the client's only fault is his poor choice of counsel . . . the District Court should first attempt to sanction the attorney at fault," which may include "replacing the errant attorney"); *Jackson v. Washington Monthly Co.*, 569 F.2d 119, 123-24 (D.C. Cir. 1977) ("the interests of justice are better served by an exercise of discretion in favor of appropriate action against the lawyer as the medium for vindication of the judicial process and protection of the citizenry from future imposition").

The Court also considered allowing Respondents' counsel to remain in these proceedings but requiring that all of his future representations be supported by appropriate declarations or affidavits from relevant executive agencies. The Court found this sanction to be inappropriate in light of the Supreme Court's guidance in *Boumediene v. Bush*, which requires district courts to proceed with Guantanamo Bay cases as promptly as possible. 128 S. Ct. 2229, 2275 ("the costs of delay can no longer be borne by those who are held in custody. The detainees in these cases are entitled to a prompt habeas corpus hearing"). The Court found that adding additional requirements for Respondents' counsel to meet would not comport with the Supreme Court's *Boumediene* decision.[2]

Since the Court's February 12, 2009 Order removing Respondents' counsel from these

---

[2] Of course, the Court could also have viewed Petitioners' Motion as conceded and ordered the release of classified information. The Court declined to issue this Order because of its obvious national security implications.

proceedings, the Court has found Respondents to be more diligent and, where they have required additional time to comply with the Court's Orders, they have moved for appropriate extensions of time. The Court's Order therefore appears to have had its intended effect.

## DISCUSSION

On March 9, 2009, counsel's supervisor filed a Motion for Reconsideration of the Court's February 12, 2009 Order requiring Respondents to appoint new counsel in his case. The Court discerns four arguments in Respondents' Motion. First, counsel's noncompliance was based on an "honest misunderstanding." Resp'ts' Mot. at 1. Second, Counsel's non-compliance was a "procedural defect" and that "the Government complied with the intent of the Court's Orders." *Id.* Third, appointing new counsel will "make compliance with future deadlines difficult." *Id.* at 2. Fourth, "the Attorney General has the . . . exclusive authority to designate which Department of Justice attorneys will represent the United States in court." *Id.* The Court rejects each of these arguments.

    *A.*    *Counsel's non-compliance was not the result of an "honest misunderstanding"*

The Court has serious concerns about counsel's ability to read and comprehend its Orders. The Court ordered Respondents to file an Opposition to Petitioners' Motion that "include[d] the declassified return[s] and relevant attachments as an exhibit, and [to] provide a justification for each item that was identified in Petitioners' Motion that Respondents have determined not to declassify." Order at 2 (Jan. 7, 2009). The Court issued Orders with the same language on January 26, 2009, and January 30, 2009.

Nevertheless, Respondents' Motion contains the following statement: "[t]he Court [] directed the Government to file a response to the Petitioner's [sic] motion by January 23, 2009,

and to include with its response the declassified return and relevant attachments and to provide justification [sic] for any continued classification of any information that Petitioners had identified as 'high priority' items." Resp'ts' Mot. at 2. This statement is false because the Court *never* directed Respondents to file an Opposition that concerned only "high priority" items. Rather, the Court directed *Petitioners* to include a list of items that they wanted Respondents to declassify and to group those items into "high priority" and "other items" so the Court would have a framework to follow in the event it needed to proceed with Petitioners' Motion in stages. Counsel's continued inability to come to terms with the Orders of this Court is a significant concern. In any event, as discussed above, Respondents failed to file an Opposition as to these "high priority" items, or otherwise.

Next, Respondents indicate that they were confused by the Court's Order, making the following statement in their Motion: "[t]he uncertainty over the meaning of the Scheduling Order appeared [] to be reflected in Petitioners' Motion, which requested production of the declassified returns by January 30 even though the Scheduling Order had directed that the declassified factual returns be submitted on January 23." Resp'ts' Mot. at 3. This "confusion" is disingenuous because Petitioners' Motion sought to have the factual returns declassified *in their entirety*. In contrast, the Court ordered Respondents to attach as exhibits to their Opposition the declassified factual returns which, if Respondents were opposing the declassification of the returns in their entirety, would contain portions that Respondents decided not to declassify. In this way, the Court could review the items that Petitioners identified and Respondents decided not to declassify, and then review Respondents' legal and factual reasons for not declassifying such items.

In any event, it is unclear how such feigned confusion could have persisted given that Respondents expressly acknowledged on January 28, 2009, that the Court had ordered them to file an Opposition (or other response) to Petitioners' Motion:

> counsel for respondents apologizes to the Court for wholly misunderstanding and failing to grasp the import of the Court's January 7, 2009[] Scheduling Order . . . it is [now] apparent that the Court contemplated a declassified version of the complete factual return filed on January 23, 2009, *in connection with a response to petitioner's motion for a more complete unclassified return*.

Resp'ts' [451] Mot. for Extension at 1-2 (emphasis added). Accordingly, the confusion under which Respondents allegedly labored had clearly been dispelled after January 28, 2009, after which Respondents' counsel continued to violate the Court's Orders.

Similarly, Respondents' Motion contains the following statement: "[b]ecause Respondents were complying with rather than opposing Petitioners' Motion, Government counsel never contemplated the filing of a memorandum in opposition." Resp'ts' Mot. at 4. This statement defies logic. Respondents were *not* complying with Petitioners' Motion because they were *not* agreeing to declassify the factual returns in their entirety – the relief sought in Petitioners' Motion. This fact is manifest because Respondents eventually submitted to the Court various declarations justifying Respondents' decision *not* to declassify various portions of the factual returns. It is unclear how Respondents could have believed they were not opposing Petitioners' Motion when, at the same time, they were not affording them the relief requested and were submitting various declarations to the Court justifying why they were opposing such relief.

At bottom, nothing in Respondents' explanation for counsel's non-compliance suggests that his conduct was the result of a misunderstanding. Counsel needed to either comply with the Orders of the Court or to move for an appropriate extension of time to comply with the same.

The Court was not required to wait for a fourth Order to be violated prior to taking action.

    B.    *Counsel's non-compliance did not constitute a "procedural defect" and Respondents did not "compl[y] with the intent of the Court's Orders."*

Respondents argue that, despite their failure to submit an Opposition in violation of the Court's Orders, "the Court has been provided the information necessary to resolve any dispute." Resp'ts' Mot. at 7. First, the Court decides what it requires to resolve a dispute, not Respondents. Second, the failure of Respondents' counsel to file an Opposition deprived the Court of the document linking the items that Respondents decided not to declassify with Respondents' justifications for not declassifying them within a legal framework. The declassified factual returns were approximately 1,300 pages. It was the responsibility of Respondents' counsel–not the Court–to do the work required to link the items Respondents decided not to declassify with Respondents' justifications for the same, and to incorporate such justifications within a legal framework.

Respondents' apparent failure to comprehend what was expected is reflected in the following statement contained in their Motion: "[i]f Petitioners believe any of the [Respondents'] redactions are improper, they can seek relief from the Court and the United States can file any necessary responsive brief." Resp'ts' Mot. at 7. What Respondents fail to understand is that Petitioners had already filed such a motion on January 9, 2009, reflecting their belief that all of Respondents' redactions were improper. Thus, Respondents' Opposition was to be filed *in response to* a motion for relief, not *in anticipation of* one.

    C.    *Appointing new counsel will not "make compliance with future deadlines difficult"*

The Court summarily rejects Respondents' argument that appointment of new counsel

10

will make compliance with future deadlines difficult. Respondents' counsel was unable to meet the obligations imposed by the Court's Orders prior to his removal, so new counsel can only improve Respondents' record of compliance to date. Additionally, the Court has found Respondents to have been more diligent since issuing its removal Order, and the Court anticipates the same as these proceedings move forward.

>    D.   *The Attorney General's authority to designate counsel does not override this Court's Authority to Sanction Respondents*

Respondents' Motion acknowledges that "this Court has inherent authority necessary to maintain control over proceedings conducted before it and to discipline conduct committed in its presence." Resp'ts' Mot. at 6 (citing Local Civil Rule 83.13(b)). Respondents argue, however, that such power should be exercised with caution, provide the offending attorney an opportunity to be heard, and be weighed against the Attorney General's right to designate the counsel who represents the United States in a given suit. *Id.* at 6-8. These arguments are not persuasive. As discussed above, the Court did not sanction Respondents until after the *third* violation of its Orders and after considering alternative sanctions. The Court also provided Respondents' counsel with an opportunity to correct his conduct by specifically warning that sanctions would be imposed for further violations, *see* Order at 5 (Jan. 30, 2009), and did not impose sanctions until after counsel and his supervisor had the opportunity to "explain" the reasons for counsel's non-compliance at the February 11, 2009 Status Hearing. Finally, although the Attorney General has the right to designate its representative in a given hearing, that authority does not trump this Court's ability to maintain control over its own proceedings, including the enforcement of its Orders through sanctions. As the D.C. Circuit recently explained, "[d]istrict judges must have

11

authority to manage their dockets" which includes "whether and how to enforce the deadlines they impose." *In re Fannie Mae Securities Litig.*, 552 F.3d 814, 822 (D.C. Cir. 2009).  In this Court's estimation, ordering Respondents to appoint new counsel was the most appropriate sanction for the repeated violation of the Court's Orders.  Nothing in Respondents' Motion for Reconsideration persuades the Court otherwise.  The Court shall therefore deny Respondents' Motion.[3]

Accordingly, it is, this 6th day of April, 2009, hereby

**ORDERED** that Respondents' [500] Motion for Reconsideration is DENIED.

**SO ORDERED.**

Date: April 6, 2009

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge

---

[3] Respondents' Motion includes a summary of counsel's credentials and indicates that he has had a distinguished legal career.  The Court notes that its Order removing him from these proceedings is not intended to impugn his abilities, but rather, is a result of his conduct in this case, before this Court, that was not appropriate and that fell below that which is expected from Government counsel.